# CONTRACT
## BETWEEN OWNER AND CONTRACTOR

**THIS AGREEMENT** is made as of the Twenty Eighth day of May in the year of Two Thousand and Four

**BETWEEN** the Owner:
*The* **First Baptist Church of Glenarden**
**3600 Brightseat Road**
**Landover, MD 20785**

And the Contractor:
**New Market Metal Craft, Inc.**
**9635 S. Congress Street**
**New Market, VA 22844**

The Architect is:
**HH Architects**
**5910 Central Expressway, Suite 1200**
**Dallas, Texas 75206**

Contract Sum: **Eight Hundred Sixty Seven Thousand Five Hundred Thirty Dollars ($867,530.00)**

Project:        **New Worship Center, Phase I**
              **First Baptist Church of Glenarden**
              **610 Watkins Park Drive**
              **Kettering, MD 20774**
              **Miscellaneous Metals**

The Owner and Contractor agree as set forth below.

## ARTICLE 1
### THE CONTRACT DOCUMENTS

The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of this Agreement, and other documents listed in this Agreement. The Contract Documents form the Contract between the Owner and the Architect, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. *To be enforceable*, any amendment to the Contract and the Contract Documents, including this Agreement, must be mutually agreed upon, and in *writing and signed by both parties.* ___ FBCG _MM_ NMC An enumeration of the Contract Documents, other than Modifications, appears in Article 16. If anything in the other Contract Documents is inconsistent with this Agreement, this Agreement shall govern. The Contractor hereby affirms that it has examined all Contract Documents, and agrees that the Contractor will not plead unfamiliarity with any of said documents in connection with any dispute which may arise hereunder or in connection with any claim for extra compensation.



## ARTICLE 2
## THE WORK OF THIS AGREEMENT

The Contractor shall furnish, for the price indicated, all labor, materials, tools, equipment, supervision, and services necessary to execute the entire Work described in the Contract Documents and identified and described in Schedule A attached hereto, except to the extent specifically indicated in the Contract Documents to be the responsibility of others, or as follows:

The work shall be performed by the Contractor in a good and workmanlike manner strictly in accordance with the Contract Documents.

## ARTICLE 3
## RELATIONSHIP OF THE PARTIES

3.1     The Contractor accepts the relationship of trust and confidence established by this Agreement and covenants with the Owner to cooperate with the Architect and the Owner, and to utilize the Contractor's best skill, efforts and judgment in furthering the interests of the Owner; to furnish efficient business administration and supervision; to make best efforts to furnish at all times an adequate supply of workers and materials; and to perform the Work in the best way and most expeditious and economical manner consistent with the interests of the Owner.  The Owner agrees to exercise best efforts to enable the Contractor to perform the Work in the best way and most expeditious manner by furnishing and approving in a timely manner any information reasonably required by the Contractor, and making payments to the Contractor in accordance with requirements of the Contract Documents.

3.1.1   Communication – Contractor hereby recognizes that there is a hierarchy of communication on this Project, and that all communications to the Owner are to be directed to the Owner's authorized project personnel as identified by the Owner.  Contractor agrees that it will maintain this hierarchy of communication and will not address construction issues to anyone other than the Owner's authorized project personnel.

## ARTICLE 4
## DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

4.1     Date of Commencement.  The date of commencement is the date from which the Contract Time of Subparagraph 4.2 is measured; it shall be fixed in a notice to proceed.

Unless the date of commencement is established by a notice to proceed issued by the Owner, the Contractor shall notify the Owner in writing not less than five (5) days before commencing the Work to permit the timely filing of mortgages, mechanic's liens, and other security interests.

4.2     Time of the Essence.  Time is of the essence in the Contractor's performance.  The Contractor shall achieve Substantial Completion of the entire Work not later than Five Hundred Twenty Days form the date of this agreement which is *May 28, 2004*, and is subject to adjustments of this Contract Time as provided in the Contract Documents.

4.3   Failure to Complete the Work on Time. It is mutually agreed by and between the parties that time is an essential part of this contract and that in case the Contractor fails to complete his contract within the time specified and agreed upon, the Owner will be damaged thereby; but because the amount of damages, inclusive of expenses for inspection, superintendence, and necessary traveling expenses, may be difficult if not impossible to definitively ascertain and prove, it is hereby agreed that the amount of such damages shall be the appropriate sum set forth below in the attached Schedule C, The Schedule of Liquidated Damages as liquidated damages for every working day's delay in finishing the work in excess of the number of working days prescribed; and the Contractor hereby agrees that said sum shall be deducted from any monies due the Contractor under this Agreement or if no money is due the Contractor, the Contractor hereby agrees to pay to the Owner as liquidated damages, and not by way of penalty, such total sum as shall be due for such delay, computed aforesaid.

4.4   Time of Completion – As stated in paragraph 4.2, time is of the essence for completion of the Work. Therefore, Contractor agrees (a) to provide at the Project site (identified on Page 1 hereof) the materials, equipment, laborers, and supervision necessary to begin work upon the Owner's order to do so; (b) to perform the Work and all parts thereof promptly, diligently, and in such order and sequence as the Owner or Architect may direct to insure the efficient, expeditions, and timely prosecution of the entire work of the Project; and (c) to furnish sufficient forces, supervision, equipment and materials at such times and for such periods, as will result in progress according to the approved progress schedule or any modification thereof. Owner reserves the right to modify any such progress schedule with respect to the required sequence or duration of the Work or any portion thereof, and Owner makes no representation that Contractor will be able to commence, prosecute or complete the Work in accordance with any progress schedule. Should the Owner provide Contractor with progress schedules for the performance of the work, it is understood and agreed that said progress schedules are based upon the reasonable expectation that the conditions of the project will be such as will permit the Contractor to perform therein provided; however, it is further understood and agreed that such schedules are not guarantees that the Contractor's work can be performed within the time periods or durations or in the sequence set for the therein, and such schedules may accordingly be changed or revised by Owner in its sole discretion, from time to time as circumstances may require. Such progress schedules, if any, do not relieve the Contractor of the obligation, as set forth herein, to follow the progress of the work or the directions of the Owner or Architect. Nothing herein shall be construed as requiring the Owner, either expressly or impliedly, to furnish the Contractor with progress schedules.

4.4.1 The Schedule – The Owner will provide contractor with a form of schedule as is appropriate for the Project. Contractor shall (a) accept the schedule as written, thereby making the Schedule part of the Contract Documents and accepting the responsibility to comply with the Schedule or (b) reject the schedule as submitted to the Contractor and offer reasonable changes to items of this schedule to better define the schedule for completion within the contractual parameters of the Project. If such changes are made and agreed to by the Owner the Owner will re-make the schedule reflecting such change(s) and submit it to all Contractors for their approval. No response by Contractor within ten (10) working days from transmittal of the schedule shall constitute acceptance of the schedule as written. Contractor shall submit to the Owner a specific man-loaded construction schedule for all its activities that fits within the time frame allotted by the initial project Schedule within ten

(10) working days of acceptance of the initial Schedule.

4.5    Extensions of Time – If for reasons beyond its control, the Contractor shall be materially delayed at any time in the progress of the work, Contractor shall be entitled to an extension of time for completion of the Work hereunder; provided that the Contractor shall have filed with the Owner a written claim for such extension. If Contractor shall be materially delayed by the wrongful act or omission of the Owner, the time for completion of the work shall be extended for a period equal to the reasonably estimated period of delay as determined by the Owner. Anything herein to the contrary notwithstanding, no extension of time shall be granted unless (1) a written claim therefore shall be presented to the Owner within Forty-Eight (48) hours *after the Contractor has actual notice of the* commencement of the delaying event or condition and (2) demonstrates that it could not have anticipated or avoided such delay, obstruction, hindrance or interference and has used all available means to minimize the consequences. thereof. The extension of time herein provided shall be Contractor's sole and exclusive remedy for any delay, and Contractor shall have no claim for damages against Owner by reason thereof. FBCG____/ A1.____ NMC _MM___

## ARTICLE 5
## CONTRACT SUM

5.1    Contract Sum. The Owner shall pay the Contractor in current funds for the Contractor's performance of the Contract the Contract Sum and Reimbursable Costs, subject to additions and deductions as provided in the Contract Documents.

5.2    Alternates. The Contract Sum is based upon the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner:

*Performance and Payment Bond will not be an **additional** requirement.*

## ARTICLE 6
## CHANGES IN THE WORK

6.1    Modifications and Adjustments. The Owner may, without invalidating the Contract or any bond given hereunder, order extra and/or additional work deletions, or other modifications of the Work. Such changes to the Work shall be made in accordance with the applicable provisions of the Contract, or in the absence of such provisions on an agreed or equitable basis. Such changes shall be effective only upon written order of the Owner.

6.2    Pricing Changes. The value of the work to be changed, added or omitted shall be determined by the lump sum or unit prices, if any, stipulated herein for such work. If no prices are stipulated, such value shall be determined by whichever of the following methods or combination thereof the Owner elects:

6.2.1    By adding or deducting a lump sum or an amount determined by unit price agreed upon between the parties hereto.

6.2.2    By adding (1) the actual net cost to the Contractor of labor in accordance with the established rates, industry average for hourly rates and applicable labor burden for structural steel workers as set forth in the most recent edition of th RSMeans Building

*Construction Cost Data book, and with regard to certain hourly rates not set forth in the RS*
*Means Construction Data book, the hourly rates shall be as follows (a) engineering and/or*
*Auto/Cad drafting and/or surveying at a rate of $100.00 per hour, portal to portal; and (b)*
*structural engineering by licensed professional engineer at a rate of $175.00 per hour,*
*which rates include any required union benefits, premiums. the Contractor is required to*
*pay for workmen's compensation and liability insurance, and payroll taxes on such labor, (2)* (2)
*the actual cost to the Contractor of materials and equipment (2) the fair rental value of any*
*equipment used by Contractor in the change that is owned by Contractor in accordance with*
*Paragraph 7.4(2)* of this Agreement including any required union benefits, premiums and
such other direct costs as may be approved by Owner less all savings, rebates and credits, (2) (4)
an allowance of 15% for profit and overhead on items (1) and (2) above.

FBCG *1.1*   NMC *MM*

Notwithstanding any inability to agree upon any adjustment or the basis for an adjustment,
the Contractor shall submit forthwith its detailed estimate of the value and time involved
in any such change or proposed change, including unit costs if requested, and shall furnish
detailed records of costs or savings actually realized as a result of any such change.
Contractor shall nonetheless proceed with the work promptly under the written order of the
Owner from which order the stated value of the work shall be omitted  If any such changes
diminish the quantity of work to be done, they shall not form the basis for a claim by the
Contractor for loss of anticipated profits.

All changes, additions or omissions in the Work ordered in writing by the Owner shall be
deemed to be a part of the Work hereunder and shall be performed and furnished in strict
accordance with all of the terms  and provisions of this Contract and the other Contract
Documents.  Contractor accepts the responsibility to keep its surety informed of all such
modifications to its contract.  The obligations of Contractor's Surety shall not be reduced,
waived or adversely affected by the issuance of such change orders, additions or deductions
even of the Contractor fails to inform surety of same, and the Owner shall not be required to
obtain consent of the surety to such modifications.

## ARTICLE 7
## COSTS TO BE REIMBURSED

The term Reimbursable Costs shall mean costs necessarily incurred by the Contractor in the
proper performance of the Work.  Such costs shall be at rates not higher than the standard
paid at the place of the Project except with prior consent of the Owner.  The Reimbursable
Costs shall include only the following items:

7.1     Labor Costs. Such costs shall consist of:

(1)     Wages of construction workers directly employed by the Contractor to
perform the construction of the Work at the site or, with the Owner's agreement, at
off-site workshops.

(2)     Wages or salaries of the Contractor's supervisory and administrative
personnel when stationed at the site with the Owner's agreement)

(3)     Wages or salaries of the Contractor's supervisory or administrative personnel

engaged, at factories, workshops or on the road, in expediting the production or transportation of materials or equipment required for the Work, but only for that portion of their time required for the Work.

(4)   Costs paid or incurred by the Contractor for taxes, insurance, contributions, assessments and benefits required by law or collective bargaining agreements and, for personnel not covered by such agreements, customary benefits such as sick leave, medical and health benefits, holidays, vacations and pensions, provided such costs are based on wages and salaries included in the Cost of the Work under Clauses 7.1(1) through 7.1(3).

7.2   Subcontract Costs.   Such costs shall consist of payments made by the Contractor to Subcontractors in accordance with the requirements of the subcontracts.

7.3   Costs of Materials and Equipment Incorporated in the Completed Construction.   Such costs                  shall consist of:

(1)   Costs, including transportation, of materials and equipment incorporated or to be incorporated in the completed construction.

(2)   Costs of materials described in the preceding Clause 7.3(1) in excess of those actually installed but required to provide reasonable allowance for waste and for spoilage.   Unused excess materials, if any, shall be handed over to the Owner at the completion of the Work or, at the Owner's option, shall be sold by the Contractor; amounts realized, if any, from such sales be credited to the Owner as a deduction form the Cost of the Work.

7.4   Costs of Other Materials and Equipment, Temporary Facilities, and Related Items.   Such costs shall consist of:

(1)   Costs, including transportation, installation, maintenance, dismantling and removal of materials, supplies, temporary facilities, machinery, equipment, and hand tools not customarily owned by the construction workers, which are provided by the Contractor at the site and fully consumed in the performance of the Work; and cost less salvage value on such items if not fully consumed, whether sold to others or retained by the Contractor.   Cost for items previously used by the Contractor shall mean fair market value.

(2)   Rental charges for temporary facilities, machinery, equipment, and hand tools not customarily owned by the construction workers, which are provided by the Contractor at the site, whether rented from the Contractor or other, and costs of transportation, installation, minor repairs and replacements, dismantling and removal thereof.   Rates and quantities of equipment rented shall be subject to the Owner's prior approval.

(3)   Costs of removal of debris form the site.

(4)   Costs of telegrams and long-distance telephone calls, postage and parcel delivery charges, telephone service at the site and reasonable petty cash expenses of

the site office.

(5)     That portion of the reasonable travel and subsistence expenses of the Contractor's personnel incurred while traveling in discharge of duties connected with the Work.

7.5     Miscellaneous Costs.  Such costs shall consist of:

(1)     That portion directly attributable to this Contract of premiums for insurance and bonds.

(2)     Sales, use or similar taxes imposed by a governmental authority which are related to the Work and for which the Contractor is liable.

(3)     Fees and assessments for the building permit and for other permits, licenses and inspections for which the Contractor is required by the Contract Documents to pay.

(4)     Fees of testing laboratories for tests required by the Contract Documents, except those related to defective or nonconforming Work for which reimbursement is excluded by Subparagraph 13.5.3 of the General Conditions or other provisions of the Contract Documents and which do not fall within the scope of Subparagraphs 7.2.2 through 7.2.4 below.

(5)     Royalties and license fees paid for the use of a particular design, process or product required by the Contract Documents; the cost of defending suits or claims for infringement of patent rights arising from such requirement by the Contract Documents; payments made with the Owner's consent; provided however, that such costs of legal defenses, judgment and settlements shall not be included in the calculation of the Contractor's Fee or of a Guaranteed Maximum Price, if any, and provided that such royalties, fees and costs are not excluded by the last sentence of Subparagraph 3.17.1 of the General Conditions or other provisions of the Contract Documents.

(6)     Deposits lost for causes other than the Contractor's fault or negligence.

7.6     Other Costs.  Other costs incurred in the performance of the Work if and to the extent approved in advance in writing by the Owner.

7.7     Emergencies: Repairs to Damaged, Defective, or Nonconforming Work.  Such costs shall consist of the following:

(1)     Action to prevent threatened damage, injury or loss in case of an emergency affecting the safety of persons and property, as provided in Paragraph 10.3 of the General Conditions.

(2)     Repairing or correcting Work damaged or improperly executed by construction workers in the employ of the Contractor, provided such damage or improper execution did not result from the fault or negligence, of the Contractor or

the Contractor's foremen, engineers or superintendents, or other supervisory, administrative or managerial personnel of the Contractor.

(3)     Repairing damaged Work other than that described in Subparagraph 7.2.2, provided such damage did not result from the fault or negligence of the Contractor or the Contractor's personnel, and only to the extent that the cost of such repairs is not recoverable by the Contractor form others and the Contractor is not compensated therefore by insurance or otherwise.

(4)     Correcting defective or nonconforming Work Performed or supplied by a Subcontractor or material supplier and not corrected by them, provided such defective or nonconforming Work did not result form the fault or neglect of the Contractor or the Contractor's personnel adequately to supervise and direct the Work of the Subcontractor or material supplier, and only to the extent that the cost of correcting the defective or nonconforming Work is not recoverable by the Contractor form the Subcontractor or material supplier.

## ARTICLE 8
## COSTS NOT TO BE REIMBURSED

The Reimbursable Costs shall not include:

8.1     <u>Salaries and Other Compensation.</u>     Salaries and other compensation of the Contractor's personnel stationed at the Contractor's principal office or offices other than the site office, except as specifically provided in Clauses 7.1(2) and 7.1(3) or as may be provided in Article 14.

8.2     <u>Office Expenses.</u>  Expenses of the Contractor's principal office and offices other than the site office.

8.3     <u>Overhead</u>. Overhead and general expenses, except as may be expressly included in Article 7.

8.4     <u>Capital Expenses.</u>   The Contractor's capital expenses, including interest on the Contractor's capital employed for the Work.

8.5     <u>Costs of Rental Machinery and Equipment</u>.   Rental costs of machinery and equipment, except as specifically provided in Clause 7.4(2).

8.6     <u>Fault or Negligence</u>. Except as provided in Subparagraph 7.2(2) through 7.2(4) and Paragraph 13.5 of this Agreement, costs due to the fault or negligence of the Contractor, Subcontractors, anyone directly or indirectly employed by any of them, or for whose acts any of them may be liable, including but not limited to costs for the correction of damaged, defective or nonconforming Work, disposal and replacement of materials and equipment incorrectly ordered or supplied, and making good damage to property not forming part of the Work.

8.7     <u>Non-specified Costs</u>.  Any cost not specifically and expressly described in Article 7.

## ARTICLE 9
### DISCOUNTS, REBATES AND REFUNDS

9.1     Cash Discounts.  Cash discounts obtained on payments made by the Contractor shall accrue to the Owner if (1) before making the payment, the Contractor included them in an Application for Payment and received payment therefore from the Owner, or (2) the Owner has deposited funds with the Contractor with which to make payments; otherwise, cash discounts shall accrue to the Contractor.  Trade discounts, rebates, refunds and amounts received from sales of surplus materials and equipment shall accrue to the Owner, and the Contractor shall make provisions so that they can be secured.

9.2     Accrued Amounts.  Amounts which accrue to the Owner in accordance with the provisions of Paragraph 9.1 shall be credited to the Owner as a deduction from the Contract Sum.

## ARTICLE 10
### SUBCONTRACTS AND OTHER AGREEMENTS

10.1     Subcontracts.  Those portions of the Work that the Contractor does not customarily perform with the Contractor's own personnel shall be performed under subcontracts or by other appropriate agreements with the Contractor.  The Owner may designate specific persons or entities from whom the Contractor shall obtain bids.

The Contractor shall not be required to contract with anyone to whom the Contractor has reasonable objection.

10.2     Conformity to Payment Provisions.  Subcontracts or other agreements shall conform to payment provisions subject to the Owner's prior written consent.

10.3     Affidavit.  The Contractor shall, as often as requested by the Owner, furnish an affidavit showing the names and addresses of all persons who shall have furnished labor, materials or services for the Work and the amount due or to become due to each such person. Progress payments may, in the discretion of the Owner, be made in the form of checks payable jointly to the Contractor and such person.  If the Contractor shall fail to pay promptly when due, for all labor services, and materials furnished in connection with the performance of the Work, the Owner may after five (5) days written notice to the Contractor, pay the amount of such liabilities and recover the amount thereof from the Contractor, directly or by the application of any portion of the Price then, or thereafter becoming, due hereunder. The Contractor will, at the request of Owner, provide affidavits from all persons furnishing labor, materials, or services to the effect that they have been paid in full.

10.4     Payment of Subcontractors and Suppliers.  Contractor will receive the payments made by Owner and will hold such payment as a trust fund to be applied first to the payment of any persons furnishing labor, materials, or services for the Work; and Contractor will so apply the payments from Owner before using any part thereof for any other purpose.

## ARTICLE 11
## ACCOUNTING RECORDS

11.1    The Contractor shall keep full and detailed accounts and exercise such controls as may be necessary for proper financial management under this Contract; the accounting and control systems shall be satisfactory to the Owner.  The Owner and the Owner's accountants shall be afforded access to the Contractor's records, books, correspondence, instructions, drawings, receipts, subcontracts, purchase orders, vouchers, memoranda and other data relating to this Contract, and the Contractor shall preserve these for a period of three years after final payment, or for such longer period as may be required by law.

## ARTICLE 12
## PROGRESS PAYMENTS

12.1    <u>Applications for Payment</u>.  Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum and the Reimbursable Costs to the Contractor as provided below and elsewhere in the Contract Documents.

12.2    <u>Covered Period</u>.  The period covered by each Application for Payments shall be one calendar month ending on the last day of the month, or as follows:

12.3    <u>Date of Payment</u>.  Provided an Application for Payment is received by the Architect not later than the **25th day of a month**, the Owner shall make a payment to the Contractor not later than **30th day of the following month**.  If an Application for Payment is received after the application date fixed above, payment shall be made by the Owner no later than the next payment cycle.

12.4    <u>Schedule of Values</u>.  Within Seven (7) days after the execution of this Contract, Contractor shall submit to the Owner a schedule of values of the various portions of Contractor's work, including quantities.  Contractor's schedule shall be prepared in such form and supported by such data as the Owner or the Architect may direct, and shall be subject to Owner's approval. The total of scheduled values shall equal the Contract Sum and shall be divided in such manner as will facilitate progress payments to the Contractor.  Each scheduled item shall include its proper share of Contractor's overhead and profit.  Each Application for Payment shall be reviewed by the Architect on the basis of the Schedule of Values mutually agreed upon by the Owner and the Contractor, in addition to Reimbursable Costs submitted and properly accounted for by the Contractor.  The Schedule of Values shall be incorporated by reference herein.  *Contractor and Owner have agreed to Contractor's Schedule of Values dated October 8, 2004, attached hereto and incorporated herein by reference*. The Schedule of Values shall allocate the entire Contract Sum among the various portions of the Work and be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require.  _____  FBCG  _____  NMC

12.5    <u>Percentage of Completion</u>.  Applications for Payment must indicate the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment.

12.6   Computation of Progress Payment.   Subject to the provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

12.6.1  Take that portion of the Contract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Work by the share of the total Contract Sum allocated to that portion of the Work in the Schedule of Values, less retainage as stated in paragraph 12.8.  Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute may be included as provided in the General Conditions even though the Contract Sum has not yet been adjusted by Change Order;

12.6.2  Add that portion of the Contract Sum properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction (or, if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing), less retainage as stated in paragraph 12.8.

12.6.3  Subtract the aggregate of previous payments made by the Owner, and

12.6.4  Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in the General Conditions.

12.7   Modification.   The progress payment amount determined in accordance with Paragraph 12.6 shall be further modified under the following circumstances:

12.7.1  Add, upon Substantial Completion of the Work, a sum sufficient to increase the total payments to Ninty-Five percent 95 %) of the Contract Sum, less such amounts as the Architect shall determine for incomplete Work and unsettled claims.

12.8   Retainage.   Retainage and reduction or limitation of retainage, if any, shall be as follows:

Until the Work is fifty percent (50%) complete, the Owner shall pay ninety percent (90%) of the amount due the Contractor on account of progress payments.  At the time the Work is Fifty percent (50%) percent complete and thereafter, the Owner and the Architect may reduce the retainage held from ten percent (10%) to five percent (5%).  Notwithstanding the foregoing, in the event the Owner or the Architect determines that the Contractor is not reasonably performing the Work, either by failure to reasonably follow the Schedule, or by failure to adequately perform the Work (all to be determined in the reasonable judgment of the Owner or the Architect), the Owner shall continue to make progress payments at the rate of ninety percent (90%) of the amount due the Contractor for each payment.

12.9   Withholding Payment – Owner shall have the right to withhold payment to Contractor for defective work not remedied or for any other breach of this Contract by Contractor, provided that Owner shall notify Contractor in writing of the intent to withhold the progress payment on or before the date that the progress payment would be payable as provided in paragraph 12.3 herein.  No payment to Contractor by Owner (final or otherwise) made under or in connection with this Agreement shall be conclusive evidence of the performance of the Work of this Agreement, in whole or in part, and no such payment shall

construed to be acceptance of any defective, faulty or improper work or materials nor shall it release the Contractor from any of its obligations under this Agreement; nor shall entrance and use by the Owner constitute acceptance of the Work or any part thereof.

12.10   Conditions Precedent – It is understood and agreed that as a condition precedent to Owner's obligation to make payment the following conditions must take place: (1) receipt by Owner from Contractor of satisfactory evidence that all persons performing or supplying work, labor, or material to the project for Contractor have provided Contractor with a full release of liens and claims with respect to the work; (2) a release of liens and claims by Contractor with respect to the work for which payment is requested on the form attached hereto as Schedule B, *contingent upon receipt of payment by Contractor from Owner in the amount stated in the release.* (3) in the case of final payment, delivery of all applicable guarantees, warranties, bonds, manuals, as-built drawings or similar documents with respect to Contractor's work and acceptance of the work by Owner. This provision shall govern the Contractor's right to payment and not just the timing for payments.

### ARTICLE 13
### FINAL PAYMENT

13.1   Final Payment. Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when:

13.1.1 the Contract has been fully performed by the Contractor except for the Contractor's responsibility to correct nonconforming Work as provided in the General Conditions and to satisfy other requirements, if any, which necessarily survive final payment; and

13.1.2 a final Certificate for Payment has been issued by the Architect; such final payment shall be made by the Owner not more than thirty (30) days after the issuance of the Architect's final Certificate for Payment

13.1.3 The furnishing of satisfactory evidence by Contractor to Owner that the Contractor has paid in full all persons furnishing labor, materials, or service in connection with the Work, and that neither Contractor, or any person claiming under or through Contractor has filed or has the right to maintain a lien or other claim against the Owner or the Project premises;

13.1.4. the return of all drawings, plans and specifications to the Owner or Architect; and

13.1.5 the delivery of all guarantees, warranties, bonds, instruction manuals, performance charts, diagrams, "as-built" drawings, and similar items with respect to the Work. As specified in Sections 01789 and 01785.

### ARTICLE 14
### MISCELLANEOUS PROVISIONS

14.1   Reference to Provision. Where reference is made in this Agreement to a provision of the General Conditions or another Contract Document, the reference refers to that provision

as amended or supplemented by other provisions of the Contract Documents.

14.2   Due and Unpaid Payments. *Approved* payments due and unpaid under the Contract shall bear interest at the rate of ~~four percent (4%)~~ two (2%) *per month* from the date payment is due ~~at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located~~. Progress payments or final payment withheld by the Owner because of Contractor's failure to correct defective work not remedied or for any other breach of the contract shall not be considered "due and unpaid" as provided in this paragraph.

14.3   Assignment.  This agreement was entered into by the Owner because of the special talents, knowledge of this Contractor. The Contractor shall not assign, transfer, or otherwise dispose of this Contract, or any part thereof, nor assign any moneys due or to become due hereunder, except with the prior written consent of the Owner.  Any assignment of this Contract or other moneys under it without of the Owner will be void and be of no effect.

14.4   Bonds.  **Unless otherwise indicated,** the Contractor *at Owner's* expense, shall obtain from a commercial surety acceptable to the Owner separate bonds:  (a) for the due and complete performance of the Contractor's obligations hereunder, and (b) for the timely payment of all charges for labor, services, and materials furnished for the prosecution of the Work.  Each such bond shall be for a sum equal to the Contract Sum and shall be delivered to the Owner within seven (7) days after the execution hereof.  If the Contractor is required to furnish bonds and fails to obtain them at anytime during the Contractor's performance of this Contract, such failure will constitute a material breach by the Contractor, entitling the Owner to terminate the Contractor's performance.

14.5   Indemnity.  ~~The Contractor agrees to defend, indemnify and hold harmless the Owner, and/or its pastors, deacons, trustees, directors, officers, employees, or agents, from and against any and all liabilities, judgments, demands, causes of action, claims, losses, damages, costs and expenses, including attorneys' fees and costs, arising out of or in connection with any bodily injury, sickness, disease or death to persons, or any damage to or destruction of property (including loss of use thereof), caused by, arising out of, resulting from or occurring in connection with the performance of the Work by the Contractor and/or its employees, agents, or subcontractors, except to the extent caused by the willful misconduct or gross negligence of the Owner.  Contractor's obligation hereunder shall not be limited by the provisions of any workmen's compensation or similar act.~~ *Similarly, Owner agrees to defend, and hold harmless the Contractor, and/or its directors, officers, employees, shareholders and agents, from and against any and all liabilities, judgments, demands, causes of action, claims, losses, damages, costs and expenses, including attorneys' fees and costs, arising out of or in connection with any the negligent acts or omissions of the Owner and/or its pastors, deacons, trustees, directors, officers, employees or agents. This Section* 14.5 ~~shall survive the termination of this Agreement.~~  In no event shall Contractor be required to defend, indemnify or hold harmless Anyone to the extent caused in whole or in part by negligence of any other party indemnified hereunder. See Article 14.7.

14.6   Insurance.  The Contractor shall maintain and pay for insurance coverage of the types and with the minimum set forth in the Insurance Schedule attached hereto as Schedule D. Such coverage shall be maintained in form and with companies acceptable to the Owner and shall, notwithstanding the Insurance Schedule, meet the applicable requirements imposed under the Contract by any governmental authority having jurisdiction over the Work.  Each policy if insurance required herein above shall provide for 30 days notice to the Owner prior

to cancellation.

The Contractor shall furnish the Owner with certificates of the insurance policy naming First Baptist Church of Glenarden "As Additional Insured" and as required hereunder and a copy of each lost-time accident report made to the Contractor's insurance carriers. The Contractor shall cooperate with its insurers to facilitate the adjustment of any claim or demand arising out of operations within the scope of the Work. Nothing contained in this Section 14.6 shall relieve the Contractor of its indemnity obligations set forth elsewhere in the Contract.

14.7    Liens. *To the fullest extent by law, the Subcontractor shall indemnify, defend and hold harmless the Owner, Contractor, Architect, Architect's consultant, and agents and employees of any of the from and against acclaims, damages, losses and expenses, including byt not limited to attorney's fees, arising out of or resulting from the Subcontractor's Work under this Subcontract provided that any such claim, damage, loss or expense is attributable to bodily injury, disease or death, or injury to or destruction of tangible property (other than the Work itself), but only to the extent caused solely by the negligent acts or omissions of the Subcontractors, or anyone for whose acts they may be liable. The Subcontractor is not responsible for and shall not indemnify nor hold harmless the Owner, Contractor, Architect Architect's consultants, and agents and employees of any of them from and against any claims, damages, losses and expenses, including but not limited to attorney's fees, to the extent they are caused by the negligence of any party otherwise indemnified hereunder.* ~~The Contractor, for itself and for all persons furnishing labor, materials or services in connection with the Work, waives and releases all mechanic's liens or right of liens or claims, now existing or hereafter arising for labor or materials furnished under the Contract, upon the Project or Project premises or upon any moneys due. The Contractor shall so notify the Owner, and the Owner shall have the right upon 48 hours notice to require that the Contractor furnish a suitable bond, escrow or other reasonable assurance of payment in the event of an adverse court decision.~~ FBCG ___   NMC ___

14.8    Labor. Contractor agrees to provide sufficient workers, equipment and materials for prompt and diligent prosecution of the Work and shall not directly or indirectly employ workers, equipment, or materials, which are likely to cause strikers, slow-downs or similar interruptions of such work. Should Contractor employ workers who cause or participate in strikes, slowdowns, or similar interruptions of the work, any and all of such interruptions by such workers shall be deemed within the control of the Contractor and shall fully entitle the Owner to the right and remedies provided for in Section 14.13.

The Contractor shall maintain and exercise control over all employees engaged in the performance of the Work and shall remove or cause to be removed from the project on premises, to the extent permitted by law, any such employees whose presence is determined by the Owner to be detrimental to the orderly prosecution of the Work.

The Contractor shall comply with all wage rates, reporting obligations, safety regulations and similar requirements established under the Contract and by any government authority having jurisdiction.

The Contractor must be fully responsible for supervising all labor, paying for all wages due for any and all day laborers employed.

14.9   Taxes.  The Contractor shall pay, or cause to be paid, when due, ~~all taxes of every kind~~ imposed, levied, or assessed by government authority with respect to the Work, including taxes for labor, ~~materials~~, and equipment utilized in connection therewith and expressly including all ~~sales~~, use, personal property, excise and payroll taxes. *The Owner warrants that all sales to it by Contractor under this Agreement and all material that is to be purchased by the Contractor in connection with the Work to be completed under this Agreement is tax exempt from any and all government taxing authority and Owner shall evidence such tax exempt status by giving Contractor a tax exempt certificate. In the event that Contractor should be required to pay any sales tax with respect to Contractor's sale of goods and/or services to be provided under this Agreement to Owner, or on account of any materials purchased by Contractor in connection with this Agreement or otherwise assessed against Contractor, Owner shall pay any costs occurred by Contractor as a result of such taxes, including the tax and any and all costs to defend against the assessment, interest, penalties and fees, if any.* The Contractor, upon request of the Owner, shall furnish satisfactory evidence of such payments. FBCG ___    NMC ___

14.10   Defective Work.  The Contractor shall provide safe, sufficient, and proper facilities at all times for the inspection of the Work by the Owner, or the Owner's representatives.  The Contractor shall, commencing within twenty-four (24) hours after receiving written notice from the Owner, promptly take down and remove all portions of the Work which the Owner, or its representative shall condemn as unsound, improper, or in any way failing to conform to the Contract Drawings and Specifications, and shall make good all Work damaged or destroyed thereby, all at Contractor's expense.  If the Contractor shall not remove and replace such work within a reasonable time, the Owner may remove and replace the same at the expense of the Contractor.

14.11   Conformity to Laws and Regulations.  The Contractor shall, at its own expense:

14.11.1  obtain all necessary permits and licenses and comply with either all statutes, ordinances, rules, regulations, and orders, of any governmental or quasi-governmental authority, applicable to the performance of the Work; and be responsible for and correct any violation thereof;

14.11.2  remove at least daily or more often as directed by the Owner, all rubbish and surplus and waste material resulting from the prosecution of the Work and all tools, scaffolding and equipment not currently required in the prosecution of the Work and all tools, scaffolding and equipment not currently required in the prosecution of the Work at its expense in accordance with all EPA, and Maryland regulations pertaining to asbestos, lead paint and any other substance that falls under the EPA guidelines for proper removal and disposal;

14.11.3  comply with the reasonable recommendation of the Owner, Contractor's insurance carriers or their association;

14.11.4  conform to the basic safety policy of the Owner and comply with all specific safety requirements promulgated by the Owner, OHSA, MOSH, including any such requirements attached hereto as Schedule E as made a part of the Contract Documents;

14.11.5  repair all damage to the work or property of others caused by Contractor;

14.11.6  furnish temporary facilities, including cost of all water electric current used by Contractor proportionate cost of operating hoisting equipment furnished by the Owner, if used by Contractor, and dumpsters;

14.11.7  protect all work in place from damage until acceptance by the Owner; and

14.11.8  prepare and submit to Owner all necessary shop and erection drawings, plans, and diagrams, and furnish **five (5)** of copies, samples, catalogue cuts, laboratory and inspection reports, and engineering calculations at reasonable times to be mutually agreed within twenty-one (21) days of the date of this Contract to permit the orderly and timely prosecution of the Work.  FBCG____/$$____   NMC___MM____

14.12  Guarantee/Warranty.  Contractor guarantees that the Work shall be free from defects and shall conform to and meet the requirements of the contract and the Contract Documents; and shall furnish any separate guarantee for the Work, or portions thereof, required under the Contract and the Contract Documents.  Contractor agrees to make good, to the satisfaction of the Owner, any portion or portions of the Work which prove defective within one (1) year(s) (or such longer period as may be specified in the Contract or Contract Documents) from the date of acceptance of the entire Project by the Owner; provided, however, that this obligation to make good shall in no respect diminish the duration of aforesaid warranty which shall exist for the longest period provided by law, or exclude other warranties provided by law or the Contract Documents.

14.13  Default.  If the Contractor should at any time:

(1)  fail to supply the labor, materials, equipment, supervision, and other things required of it in sufficient quantities and of sufficient quality to perform the Work with skill, conformity, promptness, and diligence required hereunder;

(2)  cause stoppage or delay or interference with the Work;

(3)  become insolvent;

(4)  fail in the performance or observance of any of the covenants, conditions, or other terms of this Agreement; or

(5)  file bankruptcy, either voluntary or involuntary;

then in an such event, each of which shall constitute a default hereunder by the Contractor, the Owner shall, after giving the Contractor notice of default and 48 hours within which to cure, have the right to exercise any one or more of the following remedies without waiving any other rights at law or equity that the Owner may have to recoup damages, expenses, and costs in having to complete the Work:

(1)  require that the Contractor utilize, at its own expense, overtime labor and additional shifts as necessary to overcome the consequences of any delay attributable to the Contractor's default;

(2)   remedy the default by whatever means the Owner may deem necessary or appropriate including, but not limited to, correcting, furnishing, performing, or otherwise completing the Work, or any part thereof, by itself or through third parties (utilizing where appropriate any materials and equipment previously purchased for that purpose by the Contractor) and deducting the cost thereof (plus and allowance for administrative burden equal to 15% of such costs) from any monies due or to become due to Contractor hereunder.  All costs associated with the warranting of the work performed by others will be borne at the expense of the Contractor;

(3)   terminate the Contractor for cause in accordance with Section 16.3 of this Agreement, without thereby waiving or releasing any rights or remedies against Contractor or its sureties.  Owner may also at any time file this Contract as a financing statement under applicable law; and

(4)   recover from Contractor all losses, damages, penalties, and fines, whether actual or liquidated, direct or consequential, and all attorney's fees or costs suffered by Owner by reason of or as a result of Contractor's default (whether or not Contractor is terminated for such default).

The foregoing remedies shall be considered separate and cumulative, and shall be in addition to every other remedy given hereunder or under the Contract Documents, or now or hereafter existing in law or equity.

Except as limited by this Contract, Contractor shall have the rights and remedies available at law or in equity for a material breach of the Contract by Owner.  Any default by Owner shall be deemed waived unless Contractor shall have given Owner written notice thereof within seven (7) days after the *Contractor learns of the* occurrence of such default *in writing. Similarly, any default by Contractor shall be deemed waived unless Owner shall have given the Contractor written notice thereof within seven (7) days after the Owner learns of the occurrence of such default.* Contractor shall ~~not~~ be entitled to stop the Work or terminate this Contract on account of Owner's failure to pay an amount claimed hereunder (including changed or extra work) so long as Contractor ~~shall not have~~ adequately substantiated the amount due or so long as ~~a~~ good faith dispute exists as to the amount due.  Contractor shall not be entitled to stop the Work on account of a default by the Owner unless such default shall have continued for more than seven (7) days after Owner's receipt of written notice of such default from Contractor.   FBCG __/OJ__     NMC __MM__

14.14   Waiver of Consequential Damages – The Contractor ~~waives~~ Claims against ~~Owner~~ for consequential damages arising out of or relating to this Contract. This waiver includes: ^and Owner mutually waive^ ^each other^

   14.14.1  damages incurred by ~~the Contractor~~ ^either party^ for principal office expenses including the personnel stationed there, for losses of financing, business and reputation, and for loss of profit.   ^MM^   ^FBCG^

This waiver is applicable, without limitation, to all consequential damages due to any termination in accordance with Article 14 of the General Conditions.  Nothing contained in this paragraph shall be deemed to preclude an award of liquidated direct damages, when applicable, in accordance with the requirements of the Contract Documents.

## ARTICLE 15
## WORK PERFORMED BY CONTRACTOR AND THIRD PARTIES

15.1   <u>Copyright Ownership</u> All works developed or prepared by the Contractor pursuant to this Agreement, including but not limited to all plans, drawings, and specifications are the sole property of the Owner *upon full payment for such items in accordance with the agreed-to Schedule of Values,* ("Prepared Works"), and all possible right, title and interest therein shall vest in the Owner, and shall be deemed to be a "work made for hire" under United States copyright law (17 U.S.C. §101 et seq.) and as such may be used by the Owner, its licensees, sublicensees, assigns and transferees, for and in all media now known or later developed.  To the extent that title to any such Prepared Works may not, by operation of law or otherwise, vest in the Owner or such works may not be considered to be work made for hire, Independent Contractor hereby irrevocably assigns to the Owner all possible right, title and interest therein.  All such Prepared Works shall belong exclusively to the Owner, and the Owner shall have the right to obtain and to hold in its own name copyrights, registrations or such other protection as may be appropriate to the subject matter, and any extensions and renewals thereof.  The Contractor further acknowledge that the Owner owns the entire, worldwide right, title, and interest in and to all "new works" or "derivative works" created by the Owner's use of any Prepared Works, or any component element(s) thereof, including but not limited to the copyrights for such "new works" or "derivative works" for all media now known and later developed.  The Contractor agrees to give the Owner any reasonable assistance required to perfect and enforce the rights defined in this paragraph. This provision shall survive the termination of this agreement.

15.2   <u>Return of Prepared Works</u>.  Upon termination, Contractor shall return to the Owner all Prepared Works, including but not limited to, unfinished drafts and notes regarding the Prepared Works.

15.3   <u>Work of Third Parties</u>.  The Owner shall have the right to direct the prosecution of the Work and to coordinate such Work with the work of third parties.  The Contractor shall cooperate with, and shall not delay, impede, or otherwise impair the work of third parties participating in the construction Project.  In the event that the Contractor shall be delayed or hindered by the act or omission of any third party, it is understood and agreed that the Owner shall not be responsible for any cost, loss, or damage incurred by Contractor, it being agreed that an extension of the contract time shall be Contractor's sole compensation, *unless such third party is under the direct control of the Owner.*

15.4   <u>Patents</u>.  Contractor agrees to defend, indemnify and save harmless Owner from and against any loss, liability, damage, cost, or expense on account of infringement or alleged infringement of any patent rights by reason of the Work or materials used by Contractor. Contractor shall pay all license fees and royalties pertaining to the Work.

## ARTICLE 16
## TERMINATION OR SUSPENSION

16.1   <u>Right of Termination</u>.   The Contract may be terminated by the Owner or the Contractor as provided in Article 14 of the General Conditions.

16.2    Termination of Project.    If the Project is terminated, the Contractor shall be thereupon likewise be terminated.    In no event shall Contractor be entitled to anticipated profits.

16.3    Termination for Cause.    At any time, the Owner may terminate this Agreement upon seven days advance notice in writing without cause, or for cause without notice ("Notice of Termination").    Cause shall include, but not be limited to, the events listed in Section 14.13 of this Agreement. Further, the Owner shall have no obligation to proceed with any phase of this Agreement or to pay the Contractor the amount due for any of the Work performed subsequent to the delivery of the Notice of Termination, if in the Owner's sole discretion, it is not satisfied with the performance of the Contractor prior to the delivery of the Notice of Termination.    FBCG _____    NMC _____

*shall be defined in (man)*

16.4    Payment following Termination for Cause.    If the Contract is terminated by the Owner for cause as provided in Article 14 of the General Conditions, the Owner shall pay the Contractor an amount calculated as follows:

   (1) Take the Cost of the Work incurred by the Contractor to the date of termination.

   (2) Add the Contractor's Fee computed upon the Cost of the Work to the date of termination at the rate stated in Paragraph 5.1 or, if the Contractor's Fee is stated as a fixed sum in that Paragraph, an amount which bears the same ratio to that fixed-sum Fee as the Cost of the Work at the time of termination bears to a reasonable estimate of the probable Cost of the Work upon its completion.

   (3) Subtract the aggregate of previous payments made by the Owner.

   (4) The Owner shall also pay the Contractor fair compensation, either by purchase or rental at the election of the Owner, for any equipment owned by the Contractor which the Owner elects to retain and which is not otherwise included in the Cost of the Work under Subparagraph 15.3.1. To the extent that the Owner elects to take legal assignment of subcontracts and purchase orders (including rental agreements), the Contractor shall, as a condition of receiving payments referred to in the Article 15, execute and deliver all such papers and take all such steps, including the legal assignment of such subcontracts and other contractual rights of the Contractor, as the Owner may require for the purpose of fully vesting in the Owner the rights and benefits of the Contractor under such subcontracts or purchase orders.

16.5    Suspension.    The Work may be suspended by the Owner as provided in Article 14 of the General Conditions; in such case, the Guaranteed Maximum Price, if any, shall be increased as provided in Subparagraph 14.3.2 of the General Conditions except that the term "cost of performance of the Contract" in that Subparagraph shall be understood to mean the Cost of the Work and the term "profit" shall be understood to mean the Contractor's Fee as described in Paragraphs 5.1 and *16.3* of this Agreement.

## ARTICLE 17
## ENUMERATION OF CONTRACT DOCUMENTS

The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated as follows:

(1)  The Agreement is this executed Contract Between the Owner and Contractor.

(2)  The General Conditions are the General Conditions of the Contract for Construction, AIA Document A201, 1997 Edition.

(3)  The Supplementary and other Conditions of the Contract are those contained in the Project Manual dated July 7, 2003, and are as follows:

| Document | Title | Pages |
|---|---|---|
| 00600 | Contract Bonds And Certificates | 1 thru 3 |
| 00700 | General Conditions | All |
| 00810 | Supplementary Conditions | 1 thru 8 |
| 01110 | Summary of Work | 1 thru 3 |
| 01250 | Contract Modification Procedures | 1 thru 3 |
| 01270 | Unit Prices | 1 thru 2 |
| 01270 | Schedule of Values | 1 thru 2 |

(4) The Specifications are those contained in the Project Manual dated July 7, 2003 and are contained in **"The Table of Contents"**, pages 1 -5 attached to this contract. *(Either list the Specifications here or refer to an exhibit attached to this Agreement)*

| Section | Title | Pages |
|---|---|---|

(5)  The Drawings are as follows, and are dated July 7, 2003 unless a different date is shown below:

| Number | Title | Date |
|---|---|---|
| C-5 | Detail Sheet | |
| 4.25 | Tower Framing Plans | 6/25/03 |
| 4.33 | Foundation Sections & Details | 6/25/03 |
| 4.34 | Plan/Schedule & Details Retaining Wall | 6/25/03 |
| 4.42 | Floor Framing Sections & Details | 6/25/03 |
| 4.45 | Roof Framing Sections & Details | 6/25/03 |
| 4.46. | Roof Framing Sections & Details | 6/25/03 |
| 5.01 | First Floor Plans | 9/26/03 |
| 5.02 | Second Floor Plans | 9/26/03 |
| 5.03 | Third Floor Plans | 7/14/03 |
| 5.04 | Level "A" Plan | 7/14/03 |

| | | |
|---|---|---|
| 5.05 | Level "B" Plan | 7/14/03 |
| 5.06 | Roof Plan | 7/14/03 |
| 5.10 | Lower Floor Plan | 9/26/03 |
| 5.11A | First Floor Plan Area "A" | 9/26/03 |
| 5.11B | First Floor Plan Area "B" | 9/26/03 |
| 5.11C | First Floor Plan Area "C" | 9/26/03 |
| 5.11D | First Floor Plan Area "D" | 9/26/03 |
| 5.12A | Second Floor Plan Area "A" | 9/26/03 |
| 5.12B | Second Floor Plan Area "B" | 9/26//03 |
| 5.12C | Second Floor Plan Area "C" | 9/26//03 |
| 5.12D | Second Floor Plan Area "D" | 9/26/03 |
| 5.13A | Third Floor Plan Area "A" | 9/26/03 |
| 5.13B | Third Floor Plan Area "B" | 7/14/03 |
| 5.13C | Third Floor Plan Area "C" | 7/14/03 |
| 5.13D | Third Floor Plan Area "D" | 7/14/03 |
| 5.14A | Level "A" Plan Area A | 7/14/03 |
| 5.14D | Level "A" Plan Area D | 9/26/03 |
| 5.15A | Level "B" Plan Area A | 9/26/03 |
| 5.16A | Level "C" Plan Area  A | 7/14/03 |
| 5.17A | Level "D" Plan Area A | 7/14/03 |
| 5.18A | Level "E" Plan Area A | 7/14/03 |
| 5.19A | Level "F" Plan Area A | 9/26/03 |
| 5.20A | Level "G" Plan Area A | 7/14/03 |
| 6.10 | Exterior Elevations | 7/07/03 |
| 6.11 | Exterior Elevations | 9/26/03 |
| 6.12 | Exterior Elevations | 9/26/03 |
| 6.13 | Enlarged Exterior Elevations | 7/14/03 |
| 6.20 | Building Sections | 7/14/03 |
| 6.21 | Building Section | 9/26/03 |
| 6.23 | Building Section | 7/14/03 |
| 6.24 | Building section @ Continuous Skylight | 9/26/03 |
| 6.25 | Enlarged Building Section | 9/26/03 |
| 6.26 | Enlarged Building Sections | 9/26/03 |
| 6.27 | Enlarged Building Sections | 9/26/03 |
| 6.30 | Wall Sections | 7/14/02 |
| 6.31 | Wall Sections | 7/14/03 |
| 6.33 | Wall Section | 9/26/03 |
| 6.34 | Wall Section | 9/26/03 |
| 6.35 | Wall Sections | 9/26/03 |
| 6.36 | Wall Section | 9/26/03 |
| 6.37 | Wall Sections | 9/26/03 |
| 6.38 | Wall Section | 7/14/03 |
| 6.39.2 | Wall Section | 9/26/03 |
| 6.40 | Section Details | 7/14/03 |
| 6.41 | Section Details | 7/14/03 |
| 6.50 | Roof Details | 7/7/03 |
| 7.12 | Details | 9/26/03 |
| 7.20 | Door Details | 7/14/03 |
| 7.22 | Door Details | 9/26/03 |

| | | |
|---|---|---|
| 8.43 | Enlarged Plans | 9/26/03 |
| 8.44 | Enlarged Plans | 9/26/03 |
| 8.49 | Corridor 2055 & Choir Rehearsal 2057 | 7/14/03 |
| 8.50 | Stair Plans & Sections | 7/14/03 |
| 8.50.1 | Stair Plans And Sections | 7/14/03 |
| 8.50.2 | Stair Plan And Sections | 7/14/03 |
| 8.50.3 | Stair Plans And Sections | 9/26/03 |
| 8.50.4 | Stair Plans And Sections | 7/14/03 |
| 8.50.5 | Stair Plans | 9/26/03 |
| 8.50.6 | Stair Sections And Elevations | 7/14/03 |
| 8.50.7 | Stair Plan And Sections | 7/14/03 |
| 8.50.8 | Stair Plan And Sections | 7/14/03 |
| 8.50.9 | Stair Plan And Sections | 7/14/03 |
| 8.51.0 | Stair Plans And Sections | 9/26/03 |
| 8.51.1 | Stair Plans And Sections | 9/26/03 |
| 8.51.2 | Stair Details | 9/26/03 |
| 8.51.3 | Stair Details | 9/26/03 |
| 8.51.4 | Ramp Elevations, Enlarged Plans | 7/14/03 |
| 8.58.0 | Elevator Plans And Sections | 9/26/03 |
| 8.58.1 | Elevator Plans And Sections | 7/14/03 |
| 8.58.2 | Elevator Plans And Sections | 9/26/03 |
| 8.58.3 | Elevator Plans And Sections | 9/26/03 |
| 8.71 | Interior Elevations | 9/26/03 |
| 8.73 | Interior Elevations | 9/26/03 |
| 9.04 | Trash Enclosure Details | 9/26/03 |
| 9.24 | Misc. Details | 9/26/03 |
| 9.25 | Misc. Details | 9/26/03 |
| 9.26 | Misc. Details | 9/26/03 |
| 9.28 | Misc. Details | 9/26/03 |
| 9.30 | Ceiling Details | 9/26/03 |
| 9.31 | Ceiling Details | 9/26/03 |
| 9.50 | Millwork Details | 9/26/03 |
| 10.09 | Worship Center First Floor Plan Area E | 9/26/03 |
| 10.10 | Worship Center Second Floor Plan Area E | 9/2/603 |
| 10.11 | Worship Center Seating Plan Area E | 9/26/03 |
| 10.12 | Worship Center Reflected Ceiling Area E | 9/26/03 |
| 10.13 | Catwalk Plan Area E | 9/26/03 |
| 10.20 | Sanctuary Interior Elevations | 9/26/03 |
| 10.21 | Sanctuary Interior Elevations | 9/26/03 |

(6)    The Addenda, if any, are as follows:

| Number | Date | Pages |
|---|---|---|
| #1 | August 6, 2003 | 1 thru 1 |
| #2 | August 6, 2003 | 1 thru 1 |
| #3 | August 22, 2003 | 1 thru 1 |
| #4 | September 23, 2003 | 1 thru 2 |

| | | |
|---|---|---|
| #5 | October 6, 2003 | 1 thru 3 |
| #6 | October 9, 2003 | 1 thru 2 |
| #7 | October 16, 2003 | 1 thru 2 |
| #8 | October 28, 2003 | 1 thru 3 |

(7)    The Project Schedule as produced by Owner and accepted by Contractor

(8)    Other Documents, if any, forming part of the Contract Documents are as follows:

    a) New Market Metal Craft, Inc. proposal dated *May 5, 2004*.

    b) New Market Metal Craft Scope of Work, dated October 8, 2004, pages 1 thru 4.

    c) Project Specifications Manual dated July 7, 2003.

    d) New Market Metal Craft Letter, dated October 8, 2004/Exclusions

    e) New Market Metal Craft Enumeration of Drawings pages 1 thru 6.

## ARTICLE 18
## NOTICES

All notices or other communications to or upon either party shall be in writing delivered by first class, air mail or facsimile, dispatched to or given at the following addresses:

<u>For the Owner:</u>
First Baptist Church of Glenarden
Attention: Construction Administrator
610 Watkins Park Drive
Kettering, MD 20775

<u>With copy to:</u>
Tamara M. McNulty
Venable LLP
8010 Towers Crescent Drive
Suite 300
Vienna, VA 22182

<u>For the Contractor:</u>
New Market Metal Craft, Inc.
9633 S. Congress Street
New Market, VA 22844

<u>With copy to:</u>

[INSERT]

In the event notices and statements required under this Agreement are sent by certified or registered mail by one party to the party entitled thereto at its above address, they shall be deemed to have been given or made as of the date so mailed.

## ARTICLE 19
## SEVERABILITY AND WAIVER

19.1    <u>Severability</u>.  If any provision of this Agreement or the application thereof to any person or circumstances shall to any extent be invalid or unenforceable, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

19.2.   _Waiver._   Failure on the part of either party to complain of any action or non-action on the part of the other party, no matter how long the same may continue, shall not be deemed to be a waiver by such party of any of its rights under this Agreement. Further, it is covenanted and agreed that no waiver at any time of any of the provisions hereof by either party shall be construed as a waiver of any of the other provisions hereof and that a waiver at any time of any of the provisions hereof shall not be construed as a waiver at any subsequent time of the same provisions. The consent or approval by the Owner to or of any action by the Contractor requiring the Owner's consent or approval shall not be deemed to waive or render unnecessary the Owner's consent or approval to or of any subsequent similar act by the Contractor.

## ARTICLE 20
## LEGAL ACTION, GOVERNING LAW, AND CONCILIATION

20.1   _Legal Action._   If ~~the Owner~~ _either party_ is required or elects to take legal action against the ~~Contractor~~ to enforce the provisions of this Agreement, _including dispute resolution procedures provided in Paragraph 20.2,_ ~~and a judgment is rendered in such action by a court of competent jurisdiction,~~ then the ~~Owner~~ _prevailing party_ shall be entitled to collect from the ~~Contractor~~ _other_ its costs and expenses incurred in connection with such legal action (including, but not limited to, reasonable attorneys' fees and court costs).

20.2   _Governing Law, Conflict Resolution, Venue, and Jurisdiction._   The laws of the State of Maryland shall govern the interpretation, construction, and enforcement of this Agreement, the Contract Documents, and all transactions and agreements contemplated hereby, notwithstanding any state's choice of law rules to the contrary. All parties recognize that conflicts or disputes may occasionally arise. If any dispute cannot be resolved in private meetings, the parties agree, as an alternative to litigation, to enter mediation and, if mediation is unsuccessful, legally binding arbitration in accordance with the rules of the American Arbitration Association, Construction Industry Arbitration Rules. Any demand for arbitration shall be filed by serving such demand on the parties listed in Article 18 above, and shall not be filed with the American Arbitration Association. The parties agree to select an arbitrator by mutual agreement, however, should the parties be unable to agree on an arbitrator, then each party shall select one neutral third party, who will choose the arbitrator for the parties. The parties agree that any arbitration award may be entered in any court having jurisdiction over the subject matter or parties. The parties understand that these methods shall be the sole remedy for any controversy or claim arising out of this Agreement or the subject matter hereof, and expressly waive their right to file a lawsuit or claim against one another for such disputes, except to enforce an arbitration decision. This provision shall survive termination of this Agreement. In the event that litigation arises notwithstanding the binding arbitration provision in this Agreement, litigation may be maintained only in the United States District Court for the District of Maryland (or any successor jurisdiction) located in Greenbelt, Maryland, or in a Maryland state court in Prince George's County, and each party hereby irrevocably consents and submits to the jurisdiction and venue of that United States District Court or state court and irrevocably waives any objection the party may have based upon improper venue, _forum non conveniens,_ or other similar doctrines or rules. If any provision of this Agreement is determined to be invalid, void, unenforceable, or inoperative by any tribunal or officer having jurisdiction hereof, or by operation of applicable law, the remaining provisions of this Agreement shall not be affected and shall continue in effect and the invalid provision shall be deemed modified to the least degree necessary to remedy such invalidity.

**ARTICLE 21**
**GENERAL**

21.1   This writing, including the documents incorporated herein by reference, constitute the entire agreement between the parties

21.2   This Contract and the Contract Documents are intended to supplement and complement each other and shall, where possible, be thus interpreted. If, however, any provision of this Contract irreconcilably conflicts with a provision of the Contract Documents, the provision imposing the greater duty on the Contractor shall govern. *(MM)* *FRCG*

21.3   This Contract shall not be modified or amended in any way except (i) by writing executed by both parties; or (ii) as otherwise expressly provided herein.

21.4   Where the context requires, the neuter shall include the masculine and feminine, and the singular shall include the plural.

This Agreement is entered into as of the day and year first written above and is executed in at least three original copies of which one is to be delivered to the Contractor, one to the Architect for use in the administration of the Contract, and the remainder to the Owner.

OWNER

_____
*(Signature)*

CONTRACTOR

_____
*(Signature)*

_____
*(John S. Terry, Elder Head of Deacons Council)*

Mike Melkersen, Vice President
*New Market Metal Craft, Inc.*

Or if the Contract Documents irreconcilably conflict with each other, the following order of priority shall apply: (A) the contractor's Scope of Work dated October 8, 2004, (and the Contractor's letter dated October 8, 2004, concerning the Scope of Work) shall prevail over any conflicting provision of the executed contract dated May 04, 2004 between Contractor and Owner ("this Agreement", including all attachments and documents incorporated therein by reference); (b) this Agreement shall prevail over the Supplementary and other conditions of the Contract ("Supplemental Conditions"); (c) the Supplemental Conditions shall prevail over the General Conditions of the Contract for Construction, AIA Document A201, 1997 Edition ("General Conditions"); (d) the General Conditions shall prevail over the Specifications contained in the Project Manual ("Specifications"); (e) the Specifications shall prevail over the Drawings; and (f) the Blown-up detail on the Drawings shall prevail over the more general detail on the Drawings. Any other provision in any other of the Contract Documents concerning order of priority shall be void. In the event of any other irreconcilable conflict, the greater duty on the Contractor shall govern.

## SCHEDULE A
## SCOPE OF WORK


Furnish all plant, equipment, services, labor and material required to furnish and install the complete Miscellaneous metals scope of work in accordance with specification section 15700 and plans dated July 14, 2003, revisions dated 6/25/03 and 9/26/03, and more particularly defined in New Market Metal Craft, Inc.'s scope of work dated October 8, 2004 and referenced in Article 17 of this contract,

To include but not limited to:

1. All steel stairs with guard rails, including those with bronze rails,
2. Grand stairs with rails,
3. Ships ladder with grating platform framing,
4. Ramp rails,
5. Folding partition supports,
6. Overhead door frames,
7. Ornamental guard with rails.
8. Catwalk access stairs,.
9. Rails at concrete stairs.
10. Catwalk framing and guard rails,
11. Furnish only loose lintel,
12. Furnish only pipe bollards,.
13. Galvanized retaining wall rails,
14. Aluminum rails @ steps and ramps,
15. Loading dock guard rails,
16. Bronze hand rails,
17. Vertical access ladders,
18. Furnish only elevator sill angles,
19. Furnish only sump pit cover and frame,
20. Elevator divider and hoist beams,
21. Projection screen supports,
22. Support framing for the Mall front sliding doors,
23. Light grid framing, beams, supports and tension rods,
24. Speaker platform support framing,
25. Furnish only steel corner guards,
26. Bronze ornamental Cross's,
27. Furnish only pipe bollards.
28. Trench frames and covers.
29. Furnish only vanity and counter top supports,
30. Duct penetration supports, detail 9/4.52,
31. Cable trench support angles, detail 4.33,
32. Auto Cad shop drawings.

Exclusions are as follows:
1.  Professional testing and inspection fees.
2.  Bonds
3.  Surveying
4.  Demolition and support system for demolition.
5.  Break metal and trim
6.  Light gauge metal framing except trusses.
7.  Expansion joint covers.
8.  Column covers.
9.  Roof Hatches and access doors, except floor access doors.
10. Manhole covers.
11. Louvers
12. Finished painting
13. Custom Bronze Railings.
14. Painting of galvanized items and anything else not listed in the scope of work.
15. Detail 5/6.40, Detail 3/6.40, Detail 7/6.40, Detail 6/4.42 are not included in the scope Of work.

FBCG                                    _____ NMC

## SCHEDULE B

### CONTRACTORS, SUBCONTRACTORS AND SUPPLIERS
### PARTIAL RELEASE OF LIENS AND CLAIMS

State of: _____

County of _____

Original contract Sum: $ _____
Approved Change Orders: $ _____

Adjusted Contract Amount: $ _____
Completed to Date: $ _____
Retention: $ _____
Total Earned (Less Retention): $ _____
Previous Payment: $ _____
Current Payment: $ _____
Contract Balance: $ _____

To:   _____ (Owner)
      _____ (Address)
      _____ (Address)

The UNDERSIGNED being duly sworn states that he is the _____ (title) of
_____ (firm), who has a contract with
_____ for furnishing _____ for the improvements
being erected on the real estate known and identified as the _____, located in
_____, and owned by the _____.

The UNDERSIGNED, for and in consideration of the sum of _____, ($_____), in
payment of invoice or application dated _____ and other goods and valuable
consideration, the receipt of which is hereby acknowledged, does hereby waive and release any and all liens,
claims or claims of right of lien on the aforementioned property and improvements thereon, and on monies or
other consideration due on account of labor or services, materials, fixtures, or apparatus heretofore furnished,
prior to _____, 200___, except for the retention stated above.

The UNDERSIGNED, respectfully warrants that the contract status set forth above is an accurate statement,
and no other sums are claimed, that all laborers, subcontractors, and suppliers employed by him have been paid
all sums previously due and will be paid all current sums due out of this payment and that none of such
laborers, subcontractors or suppliers is or will be entitled to claim or assert any claim against the above
described real estate or the improvements thereon for the labor or materials furnished to or for the account of
the undersigned. (Upon request, the UNDERSIGNED shall list the name of each of his subcontractors, and
suppliers, with contract and payment status, of said Contractors and Subcontractors and attach same hereto and
upon request furnish waivers from said parties).

Signed this _____ day of _____, 200___.

(Contractor/Supplier/Sub-Contractor)

By: _____
    (Name)   (Title)

Signed and sworn to me this _____ day of _____, 200___.

My Commission Expires: _____, 200___.
          (Notary Public)

## SCHEDULE C
## SCHEDULE OF LIQUIDATED DAMAGES

Liquidated damages will be assessed at the rate of $ N/A          per day against Contractor for failing to the Substantial Completion Date or the following Construction Milestones.

[LIST APPLICABLE MILESTONES AND SUBSTANTIAL COMPLETION DATE]

The parties specifically agree that damages for delay are difficult to determine at the date of this Contract, that the Liquidated damages provided for herein are in lieu of actual damages, are meant to be compensatory and do not constitute a penalty.

FBCG_____          NMC_____

**SCHEDULE D**

### SCHEDULE OF INSURANCE

1.      COMPREHENSIVE GENERAL LIABILITY INSURANCE INCLUDING
COMPLETED OPERATIONS, CONTRACTUAL LIABILITY INSURANCE AGAINST
THE LIABILITY ASSUMED HEREIN ABOVE, and including, INDEPENDENT
CONTRACTOR LIABILITY INSURANCE if the Contractor sublets to another all or any
portion of the Work, Personal Injury Liability, Broad Form Property Damage (including
completed operations), and Explosion, Collapse and Underground Hazards, with the
following minimum limits:

Combined Single Limit: $2,000,000.00

2.      WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY INSURANCE in
accordance with the laws of the State of Maryland.

3.      COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE covering all
owned, non-owned and hired automobiles used in connection with the Work, with the
following minimum limits:

Bodily Injury (including death) and property Damage $1,000,000.00 per
accident.

FBCG _____          NMC_____

# SCHEDULE "E"

## GENERAL SAFETY AND HEALTH PROVISIONS

The Owner requires full compliance with the requirements of the Occupational Safety and Health Act of 1970 and the current Construction Safety Act; including all standards and regulations which have been or shall be promulgated by the governmental authorities which administer such acts by contractor, its agents, employees, material men, and subcontractors, and said requirements, standards, and regulations are incorporated therein by reference.

Contractor shall comply with said requirements, standards and regulations, and require and be directly responsible for compliance therewith on the part of its agents, employees, material men, and subcontractors; and shall directly receive and be responsible for all citations, assessments, fines or penalties which may be incurred by reason of its failure or failure on the part of its agents, employees, material men or subcontractors to so comply.

_____          _____
First Baptist Church of Glenarden                NMC



**NEW MARKET METALCRAFT, INC.**
9633 S. Congress Street, New Market, VA 22844
(540) 740-9262 • FAX (540) 740-8851

# First Baptist Church of Glenarden
## JOB # 104-06-04

## SCOPE OF WORK
\* = Furnished Only
**October 8, 2004**

| STEEL STAIRS | | 5.01; 5.02; 5.03; 5.04; 5.05 |
|---|---|---|
| 1. | North Grand Stair (w/glass and bronze rails) | 8.50.2; 5.11A |
| 2. | West Grand Stair (w/glass and bronze rails) | 8.50.2; 5.11A |
| 3. | Stair #1 (w/steel pipe, rail, painted) | 8.50.1; 5.11A; 8.50.7; 8.50.8 8.50.9; 5.10 |
| 4. | Stair #2 (w/glass and bronze rails) | 8.50.3; 5.11B; 8.50.7; 8.50.9 |
| 5. | Stair #3 (w/steel pipe, rail, painted) | 8.50.0 |
| 6. | Stair #4 (w/steel pipe, rail, painted) | 8.50.4; 8.50.9 |
| 7. | Stair #5 (w/steel pipe, rail, painted) | 8.50.9; 8.50.8 |
| 8. | Stair #6 (w/steel pipe, rail, painted) | 8.50.9 |
| 9. | Stair #7 (w/steel pipe, rail, painted) | 8.50.5; 8.50.6; 8.50.9; 8.51.0 |
| 10. | Stair #8 (w/steel pipe, rail, painted) | 8.50.1; 5.11A; 8.50.7; 8.50.8; 8.50.9; 5.10 |
| 11. | Stair #9 (w/glass and bronze rails) | 8.50.3; 5.11B; 8.50.7; 8.50.9 |
| 12. | Stair #10 (w/steel pipe, rail, painted) | 8.50.0 |
| 13. | Stair #11 (w/steel pipe, rail, painted) | 8.50.4; 8.50.9 |
| 14. | Stair #12 (w/steel pipe, rail, painted) | 8.50.8; 8.50.9 |
| 15. | Stair #13 (w/steel pipe, rail, painted) | 8.50.8; 8.50.9 |
| 16. | Stair #14 (w/steel pipe, rail, painted) | 8.50.5; 8.50.6; 8.50.9; 8.51.0 |
| 17. | Stair to Catwalk Access-Area 3002 & 3007 (w/steel pipe, rail, painted) | 8.51.0 |
| 18. | Stair to roof access | 8.51.1 |
| 19. | Choir Stairs #1 & 2(w/steel pipe, rail, painted) | 8.50.7 |
| 20. | Balcony Stairs #1-12 w/Bronze Hand Rails and Bronze Hand Rails @ Tiered Seating | 1,2,3/8.50.9 10.10 |

Please Note that all embedded sleeves and inserts are FURNISHED ONLY.

First Baptist Church
Scope of Work - October 8, 2004
Page 2 of 4

## STEEL CATWALK                          **10.13; 4.24D-2; 4.46**

    21.    Steel framing, grating and rails    6.20; 6.27; 6.26; 9.28
    22.    Ship's ladder w/rails    6.26

## TOWER GRATING PLATFORMS            **4.25; 6.25**

    23.    Framing, grating and rails    5.14A; 5.20A; 4.46
    24.    Ship's ladder w/rail    5.19A; 6.25
    25.    Cage ladders    5.14A-5.20A
    26.    Tower roof hatch ladder    6/6.50

## LIGHTNING PLATFORM                  **10.13; 4.24D-2**

    27.    Platform framing    1/6.20; 6.23; 6.26; 5,6/4.45;
    Brace 1 & 2/4.45

## SPEAKER PLATFORM                    **10.13; 4.24D-2**

    28.    Platform framing    5,6,10/4.45

## FOLDING PARTITION SUPPORTS         **5.01; 5.02; 4.42**

    29.    Class rooms and Parlor    1031; 1106; 2081; 2082;
    2079; 2087; 2100; 2003;
    2019; 2021; 2020; 2027;
    Parlor 0019; 8/9.31; 6/9.30

## ELEVATORS E1, E2,E4,E5             **5.01; 5.02; 8.58.2; 5.10;**
**5.11A; 5.11B; 5.11C**

    30.    Divider and lift beams    8.58.1; 8.58.2; 8.58.3;
    4/4.32

First Baptist Church
Scope of Work - October 8, 2004
Page 3 of 4

| | | |
|---|---|---|
| 31. | Pit ladders | 8.58.0; 8.58.1; 8.58.2; 8.58.3 |
| 32. | *Sump pit grates | 2/4.32 |
| 33. | *Door sill | 3/4.32 |
| 34. | Guard rail at hoist way | 5.13D |

## OUTSIDE RAILS & BOLLARDS     C5; C6

| | | |
|---|---|---|
| 35. | Galvanized Retaining wall and rails | 1/C5 |
| 36. | Concrete step Galvanized rails | 11/C5; 1/6.13 |
| 37. | Ramp Galvanized handrail | 12/C5 |
| 38. | *Painted Pipe bollards at trash enclosure and garage | C6; 9.04; 1/6.31 |

## ORNAMENTAL RAILS     8.51.3; 8.51.4

| | | |
|---|---|---|
| 39. | Sanctuary rails | 1,2/6.20; 6.27; 1/6.21 |
| 40. | Wall rails at ramp, vestibule, and corridor | 2035; 2106; 1068A; 3,4,5,6/8.51.4 |

## ORNAMENTAL CROSSES     8.71; 6.10

| | | |
|---|---|---|
| 41. | Sanctuary bronze cross | 2/6.20; 6.27; 10.20 |
| 42. | Steel tube cross at church tower | 6.10; 6.11; 6.12; 6.25 |
| 43. | Narthex #1002, bronze cross | 6.38 |

## BRONZE/GLASS RAILINGS     5.02; 8.51.3; 5.12A

| | | |
|---|---|---|
| 44. | Mezzanine concourse | 2112; 2120; 6.24 |
| 45. | Bridge | 2000; 2028; 2101; 2076; 6.35; 6.36; 1-7/6.41 |

## MISCELLANEOUS ITEMS

| | | |
|---|---|---|
| 46. | *Steel angle corner course guards | 2/6.31 |
| 47. | Overhead support bracing at sliding door | 6.34; 2/7.21; 15/9.30 |
| 48. | Mirror supports | 9/9.31; 2/9.52 |
| 49. | *Vanity and Lavatory counter supports | 9/9.31; 9.51; 3/9.50; 2/9.52 |
| 50. | Cove light supports | 4,8/9.30 |

First Baptist Church
Scope of Work - October 8, 2004
Page 4 of 4

|     |     |     |
| --- | --- | --- |
| 51. | Projection screen support |     |
| 52. | *Cable trench support angles | 4.33; 8/4.33 |
| 53. | Duct Penetration Supports | 9/4.52 |
| 54. | *Loose lintels |     |

**NOT INCLUDED IN SCOPE:** Professional Engineering, Testing and Inspection Fees, Bonds, Surveying, Demolition, Shelf Angles, Break Metal & Trim Covering Wood Blocking, Custom Speaker Enclosures, Expansion Joint Covers, Light Gauge Framing, Stainless Steel Work Table, Chain Link Fence/Gates, Vinyl & Abrasive Stair Nosings, Cast Iron Items, Finished Painting (only primer is included), No Paint on Galvanized Items, and anything else not listed in our Scope of Work.